IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 26, 2006 Session

## CITIFINANCIAL MORTGAGE COMPANY, INC. v. AUGUSTUS BEASLEY, ET AL.

### Direct Appeal from the Circuit Court for Tipton County
No. 6086     Joe H. Walker, III, Judge

---

### No. W2006-00386-COA-R3-CV - Filed January 11, 2007

---

Appellants Augustus and Sheila Beasley (the Beasleys) seek to challenge the denial of their request to appeal an adverse unlawful detainer judgment to circuit court and to set aside the foreclosure of their residence. Specifically, the Beasleys appeal the trial court's grant of summary judgment to CitiFinancial Mortgage, Inc. (Citi) and denial of their petition for writs of certiorari and supersedeas, filed after the deadline for appealing the judgment as of right. The court denied the petition on the grounds that it did not set forth sufficient merits for removal to circuit court for a trial *de novo*. In the petition for writs of certiorari and supersedeas, the Beasleys advanced as grounds for review the insufficiency of funds for filing a timely appeal and premature foreclosure on their residence in violation of the deed of trust. On appeal, they contend these allegations constituted sufficient merits as required by Tennessee Code Annotated Section 29-18-129. We reverse and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Sheila L. Robinson-Beasley, Memphis, Tennessee, for the appellants, Augustus Beasley and Sheila Robinson-Beasley.

Jason S. Mangrum and Katherine Kellogg Kuhn, Nashville, Tennessee, for the appellee, CitiFinancial Mortgage Company, Inc.

### OPINION

The Appellants, Augustus and Sheila Beasley (Mr. Beasley, Ms. Beasley, or the Beasleys), defaulted on a loan secured by their residence and received notice of default from CitiFinancial Mortgage Company, Inc. (Citi), holder of the deed of trust and loan, by facsimile dated July 29, 2004. The facsimile correspondence, "per requested," included the amount required to cure the

default and indicated that the reinstatement figures would be "good to [August 12, 2004]." The Beasleys did not cure the default, and the foreclosure sale occurred on August 13, 2004, at the Shelby County courthouse. Citi purchased the residence for $248,606.73.

The Beasleys refused to vacate the residence. Citi obtained a detainer warrant on August 24, 2004, which was posted at the Beasleys' residence on the third attempt at service. A copy was then mailed to the Beasleys.

At the General Sessions detainer hearing on September 27, 2004, Citi obtained a judgment for possession. The Beasleys concede in their memorandum opposing summary judgment that they did not appear at the detainer hearing. Nor did they appeal the General Sessions judgment. Instead, slightly less than a month later, they filed a petition for writs of certiorari and supersedeas pursuant to Tennessee Code Annotated Section 29-18-129[1] on October 21, 2004, in Shelby County Circuit Court. In the petition, the Beasleys alleged that they did not have the funds available to post the bond for a timely appeal and that they were unaware of Citi's intent to repossess the home until October 20, 2004, the evening before filing their petition.

In January 2005, Citi filed a motion for summary judgment in response to the Beasleys' petition and appended a Statement of Material Facts Not in Dispute. In the statement, Citi recited the relevant facts supporting the judgment in the detainer action, yet omitted the relevant facts, if any, pertaining to the Beasleys' petition. Nowhere in its filings does Citi mention the date of notice of default. On February 25, 2005, a hearing on the matter occurred in Shelby County Circuit Court before Judge Rita Stotts, who announced that she would recuse herself in the matter. The same day, the Beasleys filed a motion for leave to amend the original petition, a proposed amended petition setting forth the facts pertinent to the wrongful foreclosure allegation, a statement of material facts in dispute, and a "Responsive Opposition to Plaintiff's Motion for Summary Judgment."

On August 8, 2005, upon motion by Citi and by agreement of the parties, venue for the hearing changed to Tipton County. The Tipton County Circuit Court conducted the summary judgment hearing on January 12, 2006. The Statement of Evidence or Proceedings filed by the Beasleys indicates that they argued the issue of wrongful foreclosure before the court on January 12, 2006. The record also reveals that the Beasleys re-filed all previous filings, including the proposed amended petition, in Tipton County on the next day, even though the transfer of venue occurred after

---

[1]Tennessee Code Annotated Section 29-18-129 provides that

[t]he proceedings in such action may, within thirty (30) days after the rendition of judgment, be removed to the circuit court by writs of certiorari and supersedeas, which it shall be the duty of the judge to grant, upon petition, if merits are sufficiently set forth, and to require from the applicant a bond, with security sufficient to cover all costs and damages; and, if the defendant below be the applicant, then the bond and security shall be of sufficient amount to cover, besides costs and damages, the value of the rent of the premises during the litigation.

Tenn. Code Ann. § 29-18-129 (2000).

the filings had been submitted to the court in Shelby County. They also provided, "as promised," a Memorandum of Law with attachments, another copy of the proposed amended petition, and case law in support of their argument, directly to the judge by letter dated January 12, 2006. In its order of January 26, 2006, the court found that the Beasleys had not stated sufficient merits in the petition and accordingly granted summary judgment to Citi. The order referenced the fact of foreclosure, the detainer action, the Beasleys' refusal to vacate, the filing of the petition, and the insufficient allegations therein. Although based "upon the entire record," the order did not reference the amended petition or the Beasleys' motion for leave to amend the petition.

On appeal, the Beasleys restate their contentions of insufficient funds for a timely appeal and of wrongful foreclosure. The Beasleys contend that, had Citi adhered to the terms of the deed of trust by exercising the power of sale no sooner than thirty (30) days after tendering notice of default, they could have cured the default and reinstated the loan.

## Issues Presented and Standard of Review

On appeal, the Beasleys raise the issue, as we perceive it, of whether the trial court erred in dismissing their petition for writs of certiorari and supersedeas on the grounds of insufficient merits. Citi, on the other hand, restates the issue as whether the trial court erred in granting Citi's motion for summary judgment. Because the trial court granted summary judgment in the absence of disputed material facts, the parties on appeal present only questions of law. We review questions of pure law *de novo* with no presumption of correctness for the ruling of the trial court below. *Inmon v. Hadley*, 2006 WL 2507188, at *5 (Tenn. Ct. App. 2006) (citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996)).

The resolution of this case requires us to answer three questions: first, whether the trial court properly considered the Beasleys' amended petition; second, what a petitioner for writs of certiorari and supersedeas must show to obtain review of an unlawful detainer judgment; and third, whether wrongful foreclosure is a meritorious defense to an unlawful detainer action.

## Whether the Trial Court Properly Considered the Amended Petition

We now address the threshold issue of whether the trial court properly considered the Beasleys' amended petition. Resolution of this issue proves determinative because the original petition lacked sufficient merits[2] to support a trial *de novo*, whereas the amendment added wrongful foreclosure, a potentially meritorious defense. We conclude, on procedural grounds, that the amended petition was properly before the trial court.

---

[2]The only allegation in the original petition that might satisfy the sufficient merit requirement is lack of notice of Citi's intent to repossess the property. The language of the petition leaves open the question of whether the Beasleys alleged lack of notice of the detainer hearing or of Citi's imminent execution of the writ of possession. Vague and indefinite allegations cannot sustain a petition for writs of certiorari and supersedeas following forcible entry and detainer actions. *Pritchard v. Dixie Greyhound Lines*, 192 S.W.2d 845, 847 (Tenn. 1946). We find the Beasleys' allegation of lack of notice to be equivocal at best and insufficient to satisfy the requirement.

The Tennessee Rules of Civil Procedure govern appeals taken from general sessions courts to circuit courts. Tenn. R. Civ. P. 1. According to the Rules, filings addressing the court may take one of two forms: pleadings or motions. *See* Tenn. R. Civ. P. 7. A pleading that sets forth a claim for relief must include a "short and plain statement of the claim showing the pleader is entitled to relief" and a demand for relief. Tenn. R. Civ. P. 8.01. The Rules limit the types of pleadings allowed and distinguish them from motions. *See* Tenn. R. Civ. P. 7 (limiting pleadings to the complaint, answer, reply to counterclaim, answer to cross-claim, third-party complaint, and third-party answer, and treating motions and other papers in a separate rule). A motion, on the other hand, is "an application to the court for an order" that must be in writing (unless made during a hearing or trial), state its grounds with sufficient particularity, and identify the relief or order requested. Tenn. R. Civ. P. 7.02.

As contemplated by the Tennessee Rules of Civil Procedure, a motion is not a pleading. Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5.1(a), at 5-7 (2d ed. 2004) ("Rule 7 provides separate treatment for pleadings and for motions and other papers . . . it is important not to read the term 'pleading' as encompassing a motion."); *id.* § 5.1(e), at 5-11 ("Rule 7.02(1) requires that any application to the court should be in the form of a motion. Technically, therefore, neither letters to the court, 'petitions,' nor other forms of requests other than by motion are proper."). Although reasonable persons might differ as to whether this type of petition is a motion or a pleading, we need not make this esoteric distinction here. The petition, whether treated as a pleading or a motion, should have been amended.

No provision in the Tennessee Rules of Civil Procedure addresses the amendment of motions. Banks & Entman, *supra,* § 5.1(e), at 5-14. In general, Tennessee courts will allow for a motion's amendment so long as there has been no ruling on the original motion. *Id.* at 5-15. In this case, the court had obviously not ruled on the petition (construed as the original motion). Moreover, the record on appeal reveals that the proposed amendment was in the possession of Citi for almost one year before the hearing, was filed with the Shelby County Circuit Court Clerk prior to the transfer of venue, and was argued at the hearing.[3] Indeed, the Beasleys' statement of evidence indicates that the court heard argument on and considered the issues pertaining to foreclosure, yet, as apparent from the ruling, found them unpersuasive. Nothing in the record suggests that Citi ever objected to or contested the contents of the Beasleys' statement of evidence, so we accept it as an accurate account of the proceedings in the trial court. Accordingly, considered as a motion, the amended petition was properly before the trial court.

Likewise, an analysis of the petition as a pleading yields the same result. Although the Beasleys moved for leave to amend the petition, they could have amended it as of right in any event

---

[3]Although the Tennessee Rules of Civil Procedure do not address the amendment of motions, they do contain safeguards for the benefit of non-movants. For example, the particularity and writing requirements for motions serve to notify the adverse party of the pendency of and grounds for the motion. Banks & Entman, *supra*, at 5-11, 5-13. The facts of this case provide further support for amendment because Citi was on notice of the motion and its contents well before the hearing. Thus, amending the motion/petition would not violate the safeguarding of fairness through notice as provided by the Rules.

because Citi never filed an answer. Tennessee Rule of Civil Procedure 15.01 provides that "[a] party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served." Tenn. R. Civ. P. 15.01. If the pleading at issue is the type to which no response is permitted, then the rules provide a fifteen (15) day window for amendment as of right, so long as no trial date has been set. *See* Tenn. R. Civ. P. 15.01. Nothing in the Rules forbids an answer in response to a petition for writs of certiorari and supersedeas in this circumstance.

The record indicates that Citi filed a motion for summary judgment but never filed an answer. Thus, because a motion is not a pleading, Citi never filed a responsive pleading so as to foreclose the Beasleys' opportunity to amend the petition as of right.[4] As proponents of a complaint under the Rules, the Beasleys could have amended the petition as of right in any event. Either procedural approach arrives at the same conclusion that the petition was, for all intents and purposes, properly amended.

### The Required Showing for Sustaining a Petition for Writs of Certiorari and Supersedeas Following an Unlawful Detainer Action

The parties in this appeal dispute the standard for prevailing on a petition for writs of certiorari and supersedeas. The Beasleys cite various standards yet fail to identify which one applies to their case. They argue that the problem of insufficient funds sufficiently explains a petitioner's reason for not appealing; that a petition need not state merits or an excuse for failing to appeal; and that allegations constituting a meritorious defense satisfy the sufficient merits requirement. Citi, on the other hand, contends that a petitioner must show a substantial reason for not appealing as well as allegations that, if true, would constitute a meritorious defense. The proper standard under Tennessee law lies in the middle of this spectrum.

An unsuccessful defendant in a forcible entry and detainer (FED) action has ten (10) days following the general sessions judgment to file for appellate review in circuit court. Tenn. Code Ann. § 29-18-128 (2000). Although the defendant can appeal as of right, the plaintiff[5] may regain possession of the premises by posting bond for twice the amount of one year's rent. Tenn. Code

---

[4] We note that the "appropriate pre-answer procedure for testing the legal sufficiency of a complaint" is filing a motion to dismiss for failure to state a claim. Banks & Entman, *supra* § 5.6(g), at 5-109. Moreover, whether a party files a motion to dismiss or a motion for summary judgment, it still must comply with the particularity requirements set forth in Rule 7 of the Tennessee Rules of Civil Procedure. In its motion for summary judgment, Citi identifies no grounds in support of its motion and instead conclusively asserts that it is entitled to judgment as a matter of law. In its statement of facts not in dispute, it does, however, enumerate the underlying facts of the foreclosure and detainer action. Taken together, these filings seem to place the merits of the detainer action back into question, rather than to challenge the sufficiency of the Beasleys' petition. Nevertheless, because the gravamen of this action is whether the Beasleys can retry the detainer action, we will proceed by considering the sole question of whether the Beasleys stated sufficient merits in their petition.

[5] Section 29-18-130(b)(2) alters these requirements in cases where the landlord brings an FED action in response to the lessee's failure to pay rent. *See* Tenn. Code Ann. § 29-18-130 (b)(2) (2000).

Ann. § 29-18-130 (b)(1) (2000).  Alternatively,[6] if the unsuccessful defendant desires to retain possession of the property throughout the litigation, he or she may petition the court for writs of certiorari and supersedeas, which, if issued, will stay the writ of possession and allow for review in circuit court. *Nashville Hous. Auth. v. Kinnard*, 207 S.W.2d 1019, 1020 (1949); *see* Tenn. Code Ann. § 29-18-129 (2000).  To succeed in a petition for writs of certiorari and supersedeas, the defendant/petitioner must file within thirty (30) days following the judgment, sufficiently set forth merits, and post bond to cover costs, damages, and the value of the rent during litigation. Tenn. Code Ann. § 29-18-129 (2000).  When the petitioner meets these more stringent standards, the court must issue the writs.  *Id.*

The requirements for sustaining a petition for writs of certiorari and supersedeas following FED actions differ from those following other cases. *Elliott v. Lawless*, 53 Tenn. 123 (Tenn. 1871). The general standard requires the petitioner to show good reason for not taking an appeal, whereas the standard   applicable in cases of FED judgments[7] does not.  *Elliott*, 53 Tenn. at 126.  Both standards, however, require a showing of sufficient merits.  *Id.*  Thus, when  an unsuccessful FED defendant posts bond and files for writs of certiorari and supersedeas within thirty days of the judgment, he or she need only state sufficient merits in the petition to obtain review in circuit court. *See Ammons v. Coker*, 139 S.W. 732, 733 (Tenn. 1911); *Rogers v. Wheaton,* 13 S.W. 689, 689 (Tenn. 1890); *Elliott*, 53 Tenn. at 126.

Merits sufficient to sustain a petition for writs of certiorari and supersedeas are allegations which, if true, would constitute a meritorious defense.  *S. Servs., Inc. v. Brewington*, No. 86-42-II, 1986 WL 6062, at *3 (Tenn. Ct. App. May 29, 1986); *Investors Diversified Prop. Mgmt., Inc. v.*

---

[6]Although certiorari and supersedeas offer an alternative to the unsuccessful FED defendant, we emphasize that the remedy by this alternative is different from, but not a substitute for, the remedy by appeal.  The authorities unequivocally state that, in FED actions, certiorari is not a substitute for appeal. *See, e.g., Ammons v. Coker*, 139 S.W. 732, 733 (Tenn. 1911)(noting that the petitioner could have obtained the same remedy by certiorari as by appeal only by showing good reason for failing to appeal; opining that she could have obtained a different remedy by using the certiorari and supersedeas together as provided by the statutes; and holding that the petitioner could not use certiorari alone as a substitute for appeal).  Instead, when coupled with the writ of supersedeas, certiorari provides an alternative remedy distinct from that offered by the appeal as of right. *Bell v. Smith*, 202 S.W.2d 654, 656 (Tenn. 1947); *Ammons*, 139 S.W. at 733 ("[I]f the defendant desires to retain possession . . . , he has his remedy by certiorari and supersedeas. If he is willing to surrender possession pending the litigation . . . , he has his remedy by appeal.); *Robertson v. Penn. Mut. Life Ins. Co.*, 123 S.W.2d 848, 850 (Tenn. Ct. App. 1938) (noting that Tennessee statutes provide "two alternative remedies," one of which is "by appeal, and the other . . . by certiorari and supersedeas").  Certiorari and supersedeas allow the defendant to retain possession of the property, whereas appeal leaves the defendant vulnerable to the writ of possession.  Although a petitioner for writs of certiorari and supersedeas enjoys more time to file than does an appellant, he or she  must post bond sufficient to cover the costs of appeal, damages, *and* rent during litigation, as well as bear the risk of the petition's denial.  *See* Tenn. Code Ann. § 29-18-129 (2000).

[7]Certain circumstances will require the FED petitioner to show good cause for not taking an appeal.  First, if the petitioner files after the expiration of the statutory thirty (30) day period, he or she must make the more demanding showing required under the general standard.  *Rogers*, 13 S.W. at 689.  Similarly, if the petitioner files *only* for a writ of certiorari without also petitioning for a writ of supersedeas*,* he or she must meet the higher standard by justifying the failure to appeal.  *Ammons*, 139 S.W. at 733.

*Wright*, 1985 Tenn. App. LEXIS, at \*11–\*12 (Tenn. Ct. App. 1985); *see Elliott v. Lawless*, 53 Tenn. at 126–27. The language of the statute does not require the petitioner to prove the allegations by a preponderance of the evidence or to the level of detail expected at trial. *S. Servs.*, 1986 WL 6062, at \*3. Rather, the petitioner's prima facie showing of merit will suffice for the issuance of the writs. *Id.*

The Beasleys complied with the statutory requirements of posting bond and filing for writs of certiorari and supersedeas within thirty (30) days of the unlawful detainer judgment. As petitioners who complied with the statute in seeking *de novo* review in circuit court, the Beasleys must have made a prima facie showing of merit in their petition to retry the detainer action. We now address whether, in the Beasleys' case, the allegation of wrongful foreclosure constitutes a meritorious defense to the unlawful detainer action. If it does, then the Beasleys are entitled to their writs.

### Whether Wrongful Foreclosure is a Valid Defense to an Unlawful Detainer Action

Since 1821, Tennessee has recognized "a right to bring a cause of action for a writ of possession when a lessee remains on the leased property after the lease has been terminated." *Cain P'ship v. Pioneer Inv. Servs. Co.,* 914 S.W.2d 452, 456 (Tenn.1996). Section 29-18-101 of the Tennessee Code provides that "[n]o person shall enter upon any lands, tenements, or other possessions, and detain or hold the same, but where entry is given by law, and then only in a peaceable manner." Tenn. Code Ann. § 29-18-101 (2000). The legislative intent behind the creation of FED actions was to provide a streamlined, inexpensive, summary procedure to determine the rights to possession of land, in contrast to the old formal common law ejectment action. *Newport Hous. Auth. v. Ballard,* 839 S.W.2d 86, 89 (Tenn. 1992). FED proceedings also serve the function of preventing violence and breaches of the peace that result from the inherent friction caused by repossessing property through self-help. *Childress v. Black,* 17 Tenn. 317, 320 (1836); 35A Am.Jur.2d *Forcible Entry and Detainer* § 6 (2006). To avoid these conflicts, the party seeking to repossess the land must do so with the aid of a writ of possession issued by the court. *Hayes v. Schweikart's Upholstering Co.,* 402 S.W.2d 472, 484 (1965).

In contrast to suits in ejectment, which resolve issues of title and the resulting right to possession, FED actions concern only the right to possession. *Newport Hous. Auth.,* 839 S.W.2d at 89. In these summary proceedings, "the estate, or merits of the title, shall not be inquired into." Tenn. Code Ann. § 29-18-119(c) (2000). At first glance, it would seem that wrongful foreclosure, being tantamount to an assertion of title, could not constitute a defense in this action. Where title bears directly upon the right of possession, however, a party may legitimately interpose the issue. *Allison v. Casey*, 63 Tenn. 587 (Tenn. 1874) (allowing evidence of title as proof of right to control and rent out property); *Phillips v. Sampson*, 39 Tenn. 429 (Tenn. 1859)*; Settle v. Settle*, 29 Tenn. 504 (Tenn. 1850). For example, a court may inquire into title when a claimant has fraudulently represented his title to another and induced him to lease the property. *Phillips*, 39 Tenn. at 429.

Additionally, FED actions cannot be resolved in favor of a claimant when title, if bearing directly on his immediate right to possession, is questionable. *See Elliott v. Lawless*, 53 Tenn. 123 (Tenn. 1871); 35A Am.Jur.2d *Forcible Entry & Detainer* § 50 (2006) ("[I]f the issue of title is germane to the issue of who has the present right of possession, questions of title may be raised . . . . However, such an issue may result in the case being removed from the summary proceedings contemplated by a forcible entry and detainer action, or the claimant may be required to establish his or her superior title prior to bringing the summary proceeding." (footnotes omitted)). In *Elliott v. Lawless*, the plaintiff in a detainer action appealed an adverse judgment following a retrial of the summary proceeding below. *Id.* at 124–25. He specifically appealed the denial of his motion to dismiss the defendant's petition for certiorari and supersedeas, as well as the judgment entered for defendant after the retrial. *Id.* The Tennessee Supreme Court held that the trial court properly denied the plaintiff's motion to dismiss the petition because the defendant had stated sufficient merits; moreover, there was no evidence that the defendant had forcibly taken possession of the property from the plaintiff or that he unlawfully detained it. *Id.* at 129–30. Rather, the proof tended to show that the defendant had either taken possession from one who claimed title through adverse possession or had entered when no other person was in actual possession of the property. *Id.* at 130. Because forcible entry and detainer actions do not resolve issues of title, the plaintiff had apparently sued for possession under the wrong theory. *Id.* at 129. Assuming the defendant took possession of vacant property or from a third party claiming title through adverse possession, the Tennessee Supreme Court noted that the plaintiff should have brought a suit in ejectment to attempt to regain possession. *Id.* The distinguishing feature between ejectment and unlawful detainer is the appearance of an issue regarding legal title of the plaintiff. *Metro. Life Ins. Co. v. Moore*, 72 S.W.2d 1050, 1051 (1934).

Here, we consider a detainer action brought against the maker of a deed of trust who, after default and foreclosure, refused to surrender possession of the property. Under these facts, one seeking to regain possession by way of the summary FED proceeding must rely on the action of unlawful detainer.[8] Unlawful detainer occurs "where the defendant enters by contract, either as tenant or as assignee of a tenant, . . . willfully and without force, holds over the possession from the landlord, or the assignee of the remainder or reversion." Tenn. Code Ann. § 29-18-104 (2000). Thus, a landlord/tenant relationship, established by contract, is the baseline requirement for maintaining an unlawful detainer action. If the trust deed establishes a landlord/tenant relationship between the mortgagor and foreclosure sale purchaser, then a constructive entry on the part of the purchaser attaches upon the passing of title; this constructive entry provides the basis for maintaining the unlawful detainer action. *Metro. Life Ins. Co.*, 72 S.W.2d at 1051; *Griffith v. Brackman,* 37 S.W. 273, 274 (1896). Under the facts of this unlawful detainer action, the right to immediate possession requires (1) the plaintiff's (constructive) possession and (2) the plaintiff's subsequent loss of

---

[8]Although FED proceedings are considered one type of action, the Tennessee Code identifies separate bases for the recovery of real property by summary proceeding: forcible entry and detainer, Tenn. Code Ann. § 29-18-102 (2000), forcible detainer, Tenn. Code Ann. § 29-18-103 (2000), and unlawful detainer, Tenn. Code Ann. § 29-18-104 (2000).

possession by the defendant's act of unlawful detainer. *Accord Foster v. Hill*, 510 S.W.2d 520, 522 (Tenn. Ct. App. 1973).

Even though the right to immediate possession does not generally hinge on title to the property, in the unique case of foreclosures conducted under a power of sale, however, the landlord/tenant relationship may not arise when the trustee has exercised the power of sale in violation of the deed of trust. If, according to the Beasleys' allegations, Citi's wrongful foreclosure resulted in the passage of void title and failed to place it in constructive possession of the property, then it could not maintain an unlawful detainer action. It follows that the Beasleys would have stated a meritorious defense and should have secured writs of certiorari and supersedeas.

We first consult the terms of the deed of trust to determine the effect of the trustee's timing of foreclosure. The deed of trust executed by the Beasleys provides, in pertinent part, as follows:

> **21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this security instrument but not prior to acceleration under paragraph 17 (unless applicable law provides otherwise). *The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law.* Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21 including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in paragraph 14. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.
>
> Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied . . . . *If the Property is sold pursuant to this paragraph 21, Borrower, or any person holding possession of the*

*Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.*

Since the original filing of their amended petition in February of 2005, the Beasleys have asserted that they received "notice" of default and acceleration on July 29, 2004. The facsimile is the only evidence of notice submitted by the Beasleys, and Citi has neither disputed the characterization of the facsimile as the "notice" required under these terms, nor has it provided documentation to show other correspondence between the parties. For the purposes of evaluating the Beasleys' petition, then, we consider the facsimile to support the Beasleys' prima facie case of wrongful foreclosure. It appears on its face that the undisputed date of the foreclosure sale was within the thirty (30) day curative period and that the sale violated the terms of the trust deed. Whether or not the facsimile was in fact the only "notice" provided by Citi under the terms of the contract and whether Citi in fact foreclosed in violation of the trust deed, however, are matters for trial.

In general, Tennessee law has required the trustee's strict compliance with the advertisement and notice terms as provided in the deed of trust. *See, e.g., Henderson v. Galloway,* 27 Tenn. 692, 695–96 (Tenn. 1848). The consequences of a foreclosing trustee's failure to comply with foreclosure terms depend upon the source of the requirement. Specifically, if the terms are sufficiently clear and originate in the deed of trust, the law demands strict compliance for the conveyance to be valid. *Progressive Bldg. & Loan Ass'n v. McIntyre*, 89 S.W.2d 336, 336 (Tenn. 1936). In contrast, where a foreclosing trustee proceeds according to statutory requirements, the law in Tennessee is not so exacting. *See* Tenn. Code Ann. §§ 35-5-101–35-5-116 (2001 & Supp. 2006) (addressing non-judicial sales pertaining to the foreclosure of deeds of trust). The failure of a trustee to comply with statutory requirements does not render the sale at foreclosure void or even voidable. *See* Tenn. Code Ann. § 35-5-106 (2001 & Supp. 2006) (sale without advertisement is not void); *Doty v. Fed. Land Bank of Louisville*, 89 S.W.2d 337 (Tenn. 1936); *Williams v. Williams*, 156 S.W.2d 363, 369 (Tenn. Ct. App. 1941).

But the parties can vary the terms of foreclosure by contract, and where a deed of trust provision varies from the statutory requirements, that term will generally supersede the statutory requirement. *See* Tenn. Code Ann. § 35-5-101(d) (2001 & Supp. 2006)("Nothing in this section shall be construed as applying to any notice published in accordance with any contract entered into heretofore, and expressed in a mortgage, deed of trust or other legal instruments."); *McIntyre*, 89 S.W.2d at 336 (holding a foreclosure sale to be void, and purchaser's title invalid, where trustee sold property after twenty-two days of advertisement, rather than the twenty-eight days required by the deed of trust); *Potts v. Coffman*, 240 S.W. 783, 784 (Tenn. 1922). If the trustee breaches the controlling terms, the foreclosure sale may be set aside. *McIntyre*, 89 S.W.2d at 337; *In re: Kitts*, 274 B.R. 491, 494 (Bankr. E.D. Tenn. 2002) (setting aside a foreclosure sale in light of the trustee's violation of the deed of trust default notice provisions). When the purchaser at the foreclosure sale has drafted the deed of trust controlling the sale, and where the deed of trust waives and conveys the makers' equity of redemption for the benefit of the purchaser, the instrument "must be strictly

construed, and the terms thereof must be followed strictly by the trustee, in order to deprive the makers of their title by means of a sale thereunder." *McIntyre*, 89 S.W.2d at 336. For example, a trustee must comply with terms such as notice of time and place of sale, as well as personal notice of sale, if provided for in the deed of trust.

> When, by the terms of the deed, the trustee is required before making sale to give notice to the bargainor of the time and place of sale, the giving of such notice is in the nature of a condition precedent, and, if not complied with, the sale is unauthorized and void and will communicate no title to the purchaser. And if the requirement be that personal notice shall be given, the trustee cannot substitute notice by advertisement in a newspaper, or at some public place or places, because not within the scope of his authority and also because such a departure on the part of the trustee might be made to defeat the very object of the requirement by enabling him to sell the property without the knowledge of the party making the deed.

*Henderson v. Galloway,* 27 Tenn.692, 695–96 (Tenn. 1848).

According to the terms of the deed of trust executed by the Beasleys, the Lender may invoke the power of sale only after the expiration of the thirty (30) day period. Moreover, only when the sale occurs "pursuant to . . . paragraph 21" and the Borrower refuses to surrender possession does a landlord/tenant relationship arise between the Borrower and purchaser. Assuming the Beasleys' allegations to be true and construing these terms strictly, we believe the Beasleys have stated a valid defense because Citi would have lacked authority to sell the property at foreclosure. This type of contract breach would be sufficient to prevent the passage of good title and, thus, the emergence of the landlord/tenant relationship. In the absence of this relationship, Citi would not have been in constructive possession of the property so as to maintain an unlawful detainer action.

## **Conclusion**

In this case, the Beasleys seek to retry the unlawful detainer action in circuit court by way of writs of certiorari and supersedeas. To prevail in petitioning for the writs, the Beasleys must have set forth sufficient merits, or a prima facie, meritorious defense. We hold that the Beasleys are entitled to writs of certiorari and supersedeas because, in addition to complying with the statutory bond and timeliness requirements, they stated a prima facie case of wrongful foreclosure, which, in this particular circumstance, is a valid defense. An allegation of wrongful foreclosure constitutes merits sufficient to sustain a petition for review pursuant to Tennessee Code Annotated Section 29-18-129 where the trustee has conducted the foreclosure sale before expiration of the curative period clearly set forth in the deed of trust; where the contractual curative period supersedes the statutory requirements for non-judicial foreclosure sales; where the terms of the deed of trust give rise to the power of sale only after the expiration of the curative period; where the breach of this term would invalidate the conveyance at the foreclosure sale; and, therefore, where the purchaser would acquire no title and could not establish the right to immediate possession of the premises in an unlawful detainer action.

For the foregoing reasons, we reverse the judgment of the trial court below and remand for the issuance of writs of certiorari and supersedeas and for further proceedings consistent with this opinion. The costs of this appeal are taxed to CitiFinancial Mortgage Company, Inc., for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE